MARTHA SHEFFER, Plaintiff-Appellee, v. SPRINGFIELD AIRPORT
AUTHORITY, d/b/a Springfield Capital Airport, Defendant (Simmons
Airlines, Inc., d/b/a American Eagle, Defendant-Appellant).

Fourth District    No. 4—93—0628

Argued March 23, 1994.—Opinion filed April 13, 1994.—Rehearing denied
May 20, 1994.

Karen L. Kendall (argued), of Heyl, Royster, Voelker & Allen, of Peoria,
and Frederick P. Velde and Daniel R. Simmons, both of Heyl, Royster,
Voelker & Allen, of Springfield, for appellant.

Robert K. Scott (argued) and Vasyl J. Markus, Jr., both of Bixby, Lech-
ner & Potratz, P.C., and Richard J. Briski, of Briski & Alfieri, both of Chicago,
for appellee.

JUSTICE COOK delivered the opinion of the court:

Defendant Simmons Airlines, Inc., d/b/a American Eagle,
appeals from a jury verdict finding Simmons liable for plaintiff Mar-

tha Sheffer's injuries, incurred when Sheffer alighted from a Simmons aircraft and slipped and fell on a patch of ice on her way to the airport terminal. We reverse and remand.

On February 20, 1988, plaintiff flew from Fort Wayne, Indiana, to Chicago and then to Springfield, where she was to preside over a business meeting at 1 p.m. at the Holiday Inn South. It was snowing in Fort Wayne and sleeting in Chicago, but when plaintiff got off the plane in Springfield it was bright and sunny. A Simmons employee stationed at the bottom of the airstairs motioned to and identified Gate 4. As plaintiff walked across the tarmac and approached Gate 4, some 75 yards from the aircraft, she slipped and fell on a patch of ice approximately 15 to 20 feet in diameter. An airport employee helped plaintiff up and accompanied her into the terminal.

Plaintiff went to the hospital in Springfield after her meeting, then saw her family physician two days later when she returned to her home in Pennsylvania. He prescribed pain pills and rest. In March 1988 plaintiff visited a chiropractor for several months. Because the pain in her neck and shoulder did not subside, plaintiff went to a neurologist in September 1988. The neurologist referred plaintiff to a neurosurgeon who suggested conservative therapy and surgery. Plaintiff refused surgery and followed through with conservative therapy until February 1993, when she agreed to surgery.

At trial, Simmons moved for a directed verdict at the close of plaintiff's evidence and at the close of all the evidence, on the basis that Simmons owed no duty to warn about or remove a natural accumulation of ice. Both motions were denied.

The jury was instructed that Simmons was required to use the highest degree of care "consistent with the mode of conveyance used and the practical operation of its business as a common carrier by air." In addition, the jury was instructed that Simmons' failure to, alternatively (1) post an airline employee at the door to Gate 4; (2) warn plaintiff of the icy area; (3) barricade the icy area; (4) post a sign warning of the icy area; (5) spread urea on the icy area; or (6) direct plaintiff around the icy area was a proximate cause of plaintiff's injuries. The jury returned a verdict in favor of plaintiff in the amount of $301,376 for aggravation of a preexisting condition, disability, past and future pain and suffering, medical expenses and lost earnings. After determining plaintiff was 5% contributorily negligent, the jury reduced the amount of damages to $286,308. The jury subsequently apportioned 80% of the liability to Simmons and 20% to the Springfield Airport Authority (Authority). Simmons filed a post-trial motion, which the court denied. This appeal followed.

There can be no recovery in tort for negligence unless the defen-

dant has breached a duty owed to the plaintiff. (*Schoondyke v. Heil, Heil, Smart & Golee, Inc.* (1980), 89 Ill. App. 3d 640, 643, 411 N.E.2d 1168, 1171, citing *Barnes v. Washington* (1973), 56 Ill. 2d 22, 305 N.E.2d 535.) The existence of a duty is a question of law to be determined by the court. (*Schoondyke*, 89 Ill. App. 3d at 643, 411 N.E.2d at 1171, citing *Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307; *Watson v. J.C. Penney Co.* (1992), 237 Ill. App. 3d 976, 981, 605 N.E.2d 723, 726; *Jones v. Chicago & Northwestern Transportation Co.* (1990), 206 Ill. App. 3d 136, 139, 563 N.E.2d 1120, 1122.) Questions regarding whether that duty was properly performed, however, are reserved for the trier of fact. *Jones*, 206 Ill. App. 3d at 139, 563 N.E.2d at 1122; *Serritos v. Chicago Transit Authority* (1987), 153 Ill. App. 3d 265, 269, 505 N.E.2d 1034, 1037.

■ In Illinois, in the absence of a contractual obligation, there is no duty with respect to natural accumulations of snow and ice. (*American States Insurance Co. v. A.J. Maggio Co.* (1992), 229 Ill. App. 3d 422, 425, 593 N.E.2d 1083, 1085.) Specifically, the natural accumulations rule states a business owner owes no duty to business invitees to remove accumulations of snow and ice from areas maintained for the use of those invitees where the accumulations are natural and not caused or aggravated by the owner. (*American States*, 229 Ill. App. 3d at 425, 593 N.E.2d at 1085; *Watson*, 237 Ill. App. 3d at 978, 605 N.E.2d at 724; *Serritos*, 153 Ill. App. 3d at 269, 505 N.E.2d at 1037-38.) Even where a person voluntarily removes snow, he does not owe a duty to remove natural accumulations of ice underneath the snow. (*Watson*, 237 Ill. App. 3d at 978, 605 N.E.2d at 725.) To raise properly the issue of breach, plaintiff must show the ice upon which she fell was an unnatural accumulation caused by Simmons. See *Crane v. Triangle Plaza, Inc.* (1992), 228 Ill. App. 3d 325, 330, 591 N.E.2d 936, 940.

Here, the Authority had contracted with Simmons that the Authority would remove accumulations of ice and snow. The Authority agreed to maintain the airport facilities in a safe, workable, clean and sanitary condition, "including such clearing and removal of snow and ice as is reasonably necessary to permit operations." Evidence was presented at trial that the Authority gave Simmons urea, a chemical for melting snow and ice, and Simmons may have used this urea on an emergency basis. Plaintiff erroneously asserts Simmons' possession and prior emergency use of urea was a voluntary undertaking of the duty to remove snow and ice which confirms Simmons' liability. Even if Simmons, rather than the Authority, voluntarily removed snow from the tarmac, Simmons' only duty would have been to remove natural accumulations of snow

and ice in a nonnegligent fashion. (*Crane*, 228 Ill. App. 3d at 329, 591 N.E.2d at 939-40.) Absent evidence Simmons removed that snow or ice negligently, Simmons could not incur liability for plaintiff's fall and injuries. See *Crane*, 228 Ill. App. 3d at 330, 591 N.E.2d at 940; *American States*, 229 Ill. App. 3d at 425-26, 593 N.E.2d at 1085.

■ Due to the unique control it possesses over its passengers' safety, a common carrier owes its passengers the highest duty of care consistent with the practical operation of its conveyances. (*Rotheli v. Chicago Transit Authority* (1955), 7 Ill. 2d 172, 177-78, 130 N.E.2d 172, 175; *Jones*, 206 Ill. App. 3d at 138, 563 N.E.2d at 1121; *Shoemaker v. Rush-Presbyterian-St. Luke's Medical Center* (1989), 187 Ill. App. 3d 1040, 1045, 543 N.E.2d 1014, 1017; *Serritos*, 153 Ill. App. 3d at 270, 505 N.E.2d at 1038.) That duty continues until the passenger has left the carrier and the place where passengers are discharged. The carrier is bound to furnish the passenger an opportunity to safely alight from the conveyance and reach a place of safety. (*Katamay v. Chicago Transit Authority* (1972), 53 Ill. 2d 27, 30, 289 N.E.2d 623, 625; *Shoemaker*, 187 Ill. App. 3d at 1045, 543 N.E.2d at 1017.) However, despite that heightened duty of care, a common carrier has no duty to clean up natural accumulations of snow, ice and water. (*Shoemaker*, 187 Ill. App. 3d at 1045, 543 N.E.2d at 1017; *Serritos*, 153 Ill. App. 3d at 271-72, 505 N.E.2d at 1039.) Where the accumulation is found to be natural, the carrier also has no duty to warn of the condition created by that accumulation. *Serritos*, 153 Ill. App. 3d at 272, 505 N.E.2d at 1039; *Walker v. Chicago Transit Authority* (1980), 92 Ill. App. 3d 120, 123, 416 N.E.2d 10, 13.

Arguments can be made that a common carrier's duty of highest care should prevail over the natural accumulations rule. However, *Serritos* and *Shoemaker* held that the natural accumulations rule should prevail, and we choose to follow those decisions. The natural accumulations rule may be arbitrary in some situations (see *Watson*, 237 Ill. App. 3d at 982, 605 N.E.2d at 727 (Knecht, J., dissenting) (jury should decide whether parties acted reasonably)), but overall the certainty involved in a definite rule has been considered to outweigh any possibility of unfairness in unusual situations.

In *Serritos*, where the plaintiff slipped and fell on the icy and snow-covered steps of a Chicago Transit Authority (CTA) bus, the court concluded it would be impractical to extend the highest duty of care to the CTA with respect to snow and ice removal: "[r]equiring [the CTA's] drivers to remedy a slushy condition on their steps which was brought about by snow being tracked into their vehicles by patrons would bring the transit system to a complete standstill." (*Serritos*, 153 Ill. App. 3d at 271, 505 N:E.2d at 1039.) The court ruled

that the CTA, like any other business owner, had no duty to remove or warn passengers of natural accumulations of ice and snow, "especially since such conditions are readily apparent." *Serritos*, 153 Ill. App. 3d at 272, 505 N.E.2d at 1039.

The plaintiff in *Shoemaker* slipped and fell in an elevator, a common carrier, due to a natural accumulation of water that had been tracked in from the rain outside. The court noted it has been uniformly held that landowners charged with exercising an ordinary duty of care have no duty to clean up natural accumulations of water tracked into buildings from outside. (*Shoemaker*, 187 Ill. App. 3d at 1044, 543 N.E.2d at 1017.) The court, citing *Serritos*, then held that even a common carrier has no duty to protect against natural accumulations of water. (*Shoemaker*, 187 Ill. App. 3d at 1045, 543 N.E.2d at 1017; see also *Walker*, 92 Ill. App. 3d at 123, 416 N.E.2d at 12 (woman who slipped and fell on rainy day at bottom of stairs in train station could not recover from CTA).) Despite the duty of care normally required of a common carrier, no common carrier in Illinois has been found to owe a duty to its passengers to clean up natural accumulations of snow and ice. *Wasserman v. City of Chicago* (1989), 190 Ill. App. 3d 1064, 1067, 547 N.E.2d 486, 488, arguably imposes such a duty, but there the bus driver apparently could have stopped "at some other point along the street where plaintiff would have been able to circumvent or pass through the deep piles of snow."

█ The trial court should have determined as a matter of law that Simmons owed no duty to plaintiff with respect to a natural accumulation of ice. Since no evidence was adduced at trial to indicate the ice patch was anything other than a natural accumulation, the trial court should have granted Simmons' motion for a directed verdict at the close of all the evidence.

Noting that *Serritos* and *Shoemaker* were premised upon the infeasibility of thoroughly removing water or snow which is continuously tracked into a carrier's conveyance by other passengers, plaintiff next asserts Simmons' highest duty of care should be extended to removing or warning of the ice patch upon which plaintiff fell, because that ice was stationary, existed for a substantial period of time in an area under Simmons' exclusive control, and could have been removed easily. It appears plaintiff would have us impose a duty on common carriers where only a small patch of snow or ice exists but not impose that duty during a snow or ice storm. Plaintiff would thus have us transform the determination of the existence of a duty from a question of law into one of fact. No authority exists for such a departure from the natural accumulations rule, and such a transformation would in many cases engage a great deal of the fact

finder's time without necessarily conferring a deserved benefit upon the plaintiff. From a practical standpoint, such a change would cause confusion among defendants because it would deprive them of a definite rule regarding which accumulations they must remove in order to avoid liability.

In addition, plaintiff apparently would have this court establish liability only for common carriers. We see no reason to place a higher burden on common carriers than on other business entities for clearing natural accumulations of snow, ice or water. Common carriers are charged with the highest duty of care when transporting passengers because passengers must wholly rely upon a common carrier's proper maintenance and safe operation of its equipment during passage. The danger in this case did not arise from any failure by Simmons to maintain or safely operate its equipment; rather, when plaintiff fell on the ice patch on the tarmac, she had as much control over her own safety as if she had been walking across a parking lot. It would be anomalous to impose a duty on Simmons to remove natural accumulations of snow and ice due to its status as a common carrier, but to relieve a mere landowner or business owner from that same duty, and we refuse to do so.

The judgment of the circuit court of Sangamon County is reversed and the cause remanded, with instructions to the trial court to dismiss the suit. We need not address the other issues set forth by the parties.

Reversed and remanded.

GREEN and STEIGMANN, JJ., concur.